## FASSETT v. EWART MANUF'G CO.

### (Circuit Court, N. D. Illinois. April 3, 1893.)

1. PATENTS FOR INVENTIONS—DIVISIONAL APPLICATIONS—RESERVATIONS—CONSTRUCTION—LINK-CHAIN COUPLING MACHINE.

Nelson B. Fassett filed divisional applications, designated as "Cases A and B," for a machine for coupling the links of drive chains. Case A described and claimed, among other things, a machine which assembled the links by thrusting them endwise together, and resulted in a patent issued August 17, 1886. The patent contained this reservation, designed to cover the matter contained in Case B: "The feed chute, guide way, and means for pushing the assembled links forward therein, a delivery wheel or device, the fulcrum plate or corner, operating mechanism, and such details of construction not herein broadly claimed,—form the subject of a separate application." (Case B.) Case B was put into interference with the patent issued to Eugene L. Howe May 12, 1885, (No. 317,790,) for a machine for coupling links by a sidewise thrust, and the proceedings resulted in favor of Howe. Pending this proceeding, however, Fassett, claiming that the interference issue did not cover all the matter of Case B, filed a divisional application thereof, (Case C,) alleged to include the omitted matters, which resulted in patent No. 377,376, issued to Fassett February 7, 1888. The last 9 claims of this patent were broader than those of Case A, and covered, substantially, a machine for coupling links by both an endwise and sidewise thrust. *Held,* that these claims were invalid—First, because they were too broad to be covered by the reservation in Case A; and, second, because the matter of Case C was not divisional or properly severable from the matter of Case A, whether the severance be considered as direct, or made through Case B.

2. SAME—ABANDONMENT.

By taking out the patent resulting from Case A, which was for a device arranged to operate in a specific manner, the claimant abandoned to the public the more general claims which might have been predicated upon the same combination of parts.

3. SAME—SEPARATION OF CLAIMS—ACTION OF PATENT OFFICE NOT CONCLUSIVE.

The action of the patent office in allowing a separation of claims into divisional applications is not conclusive, and the question whether the severance was proper and valid may be passed upon by the courts.

4. SAME—DIVISIBILITY OF APPLICATIONS.

The doctrine of the patent office that applications for patents shall not be severable, except on structural lines, must be held to mean upon physical lines, which actually divide the machines into separate parts.

5. SAME—INTERFERENCES—PATENT-OFFICE DECISION—CONCLUSIVENESS.

A decision by the patent office in an interference proceeding is conclusive between the parties, even if wrong, when no steps have been taken to set it aside.

In Equity. Suit for infringement of the last 9 of the 10 claims of letters patent No. 377,376, issued February 7, 1888, to Nelson B. Fassett, for a "machine for coupling chain links." Bill dismissed.

The object of the invention is thus described by the inventor in the caveat filed by him in the patent office: "This invention relates to the production of a machine which, under conditions of form and structure, shall render it capable of accomplishing automatically the labor now performed by hand manipulation, namely, that of uniting or coupling together the integral parts or links of a drive chain, to form a chain, at the same time removing any and all surplus material that may remain in consequence of the sprues not having broken off sufficiently close to the links, thereby trimming them to conform to uniform caliper from inside surface of hook, and also removing any fins or feathery extremities of the hook, if any shall there exist, and of bringing all hooks to standard size by thrusting a drift through them."

From the agreed statement of facts in this case, it appears "that the complainant, Fassett, during the winter of 1882–83, invented and constructed a machine for assembling the links of drive chains together, like that represented and exhibited in his model marked 'Fassett Exhibit Model No. 1,' and operated the same experimentally, during the first half of 1883, at the Moline Malleable Iron Works, at Moline, Ill., and put together during said time about 5,000 feet of chain, none of which, however, was ever used or sold; that said machine assembled the links of the drive chain together by an endwise thrust of the links, as shown in said model."

The coupling mechanism of this model is shown, substantially, in Fig. 1. H is a guide way or chute along which the separate links descend after being trimmed and sized by appropriate devices above. C' is the chain channel or guide way, along which the coupled chain is forced. M is a force bar which pushes the descending link into engagement with the last preceding link as it lies in the chain channel at the proper angle. V is a thrust bar which pushes the completed chain along the guide way, C', the proper distance to receive the next descending link.

Fassett's caveat was filed April 8, 1884, and renewed for one year, under the rules of the patent office, on April 4, 1885. The caveat contained the following passage: "So far, it will be noted that all that has been said about the machine has had reference only to drifting, coupling, etc., drive-chain links that belong to that class of links that are coupled together by one link being thrust endwise at an acute angle into union with the adjacent link; the end bar being adapted to enter laterally through the mouth of the hook

of the adjacent link, whatever may be the device for retaining the links in union with each other. But 'now it will be, found that the same machine is equally applicable to the purposes of drifting, trimming, coupling, etc., certain other styles of links, with but a very slight modification of the machine already illustrated. That modification is to be found illustrated in Fig. 28 of the drawings, and it has for its object the drifting, trimming, coupling, etc., of a class of links now in common use, which are made to slide sidewise into union with each other; the crossbar entering the hook at one side of the adjacent link, and moving endwise through the opening of the hook, as shown in Fig. 27."

In January, 1884, Eugene L. Howe had made a machine for assembling coupling chain links by a sidewise thrust. Howe obtained a patent for his machine on May 12, 1885, while the Fassett caveat was on file, the patent being No. 317,790. On August 21, 1885, Fassett filed divisional applications known as "Case A and Case B." Case A contained claims covering the device for coupling links by an endwise thrust, and a patent was issued thereon August 17, 1886, being No. 347,338. This patent contained the following claims, which relate more especially to the coupling devices: "(5) The chain channel or guide way, located directly under the feed chute or link channel, and in the same vertical plane therewith, in combination with a periodically moved pushing device for intermittently carrying the chain along within said guide way or chain channel the required distance to bring the hook of the link last coupled directly under the crossbar of the lowermost link in the channel of the feed chute, substantially as set forth. (6) The chain channel or guide way, located directly under the feed chute or link channel, and in the same vertical plane therewith, in combination with a force bar or coupling device for periodically forcing the lowermost link lengthwise downwardly in said feed chute into union with the last link in the chain channel or guide way, substantially as set forth. (7) The chain channel or guide way, located directly under the feed chute or link channel, and in the same vertical plane therewith, in combination with a fulcrum plate or corner, and means for pushing the chain along, at proper intervals, the required distance to bring the hook of the last coupled link directly under the end bar of the next link to be coupled therewith, substantially as set forth. (8) The chain channel or guide way located directly under the feed chute or link channel, and in the same vertical plane therewith, in combination with a fulcrum plate or corner, and means for periodically forcing the lowermost link lengthwise downwardly in said feed chute or link guide, into union with the last link in the chain channel, or guide way, substantially as set forth." "(19) In a machine for putting together or coupling the links of drive chains, a feed chute and guide way in the same vertical plane, provided at their juncture with a fulcrum plate, substantially as and for the purpose set forth. (20) In a machine for putting together or coupling the links of drive chains, a feed chute in combination with a link-coupling device located above and over the link channel of the chute, and operating substantially as and for the purpose specified. (21) In a machine for putting together or coupling the links of drive chains, the combination of a feed chute, a link-coupling device, and a spring guide connected to the lower end of the chute, substantially as and for the purpose described. (22) In a machine for putting together or coupling the links of drive chains, the combination of a feed chute, a guide way, a link-coupling device, a spring guide for the links as they turn over, and a thrust bar to feed the chain along in guide way, substantially as and for the purpose set forth."

This patent contained the following reservation, intended to cover the matter of Case B.: "The feed chute, guide way, and means for pushing the assembled links forward therein; a delivery wheel or device; the fulcrum plate or corner; operating mechanism; and such details of construction not herein broadly claimed,—form the subject of a separate application, (serial No. 174,962.)"

Case B was thrown into interference with the Howe patent under an issue framed as follows: "The combination with an inclined chute or feed way of a pusher slide for pushing the links sidewise, one at a time, to interlock

with another link held in a suitable guide way, through which the interlocked links are conveyed from the machine; a link feeder for turning over and feeding the interlocked links along the discharge guide way; and intermediate mechanism for automatically operating said devices."

This issue was finally determined in favor of Howe, on the ground that, while Fassett was the first to conceive the idea of a coupling machine having a sidewise thrust, Howe was the first to reduce the invention to actual practice, in his machine of January, 1884. But, while the interference was pending, Fassett, claiming that the interference issue did not include all the matter of Case B, filed another application as a division thereof, alleged to include the omitted matters. This application, which was designated "Case C," resulted, after several appeals from adverse decisions by the examiner, in the issuance, on February 7, 1888, of the patent now sued upon, being No. 377,376. The 9 claims in controversy are as follows: "(2) In a machine for coupling chain links, the combination of a feed chute adapted to receive uncoupled chain links, a link coupler for pushing the end bar of an uncoupled link into the hook of one of a series of assembled links, and a stop or abutment to support the hook of one of the assembled links against the thrust of the link coupler, substantially as set forth. (3) In a machine for coupling chain links, the combination of a feed chute adapted to receive uncoupled chain links, a chain channel adapted to receive assembled links, and a link coupler for pushing the end bar of an uncoupled link into the hook of one of the assembled links, substantially as set forth. (4) In a machine for coupling chain links, the combination of a feed chute adapted to receive uncoupled chain links, a chain channel adapted to receive assembled links, a link coupler for pushing the end bar of an uncoupled link into the hook of one of the assembled links, and a pushing device for advancing the assembled links in the chain channel, substantially as set forth. (5) In combination with a guide way for containing two or more assembled links, an inclined feed chute, and a link coupler for pushing or feeding from the latter the links placed therein, a positively moved pusher device arranged and operating to periodically move the assembled links to the proper extent to bring the last one of the series into proper relationship with the link to be next engaged with it, substantially as set forth. (6) In a machine for coupling chain links, the combination of a feed chute adapted to receive uncoupled chain links, a chain channel adapted to contain assembled links,—the feed chute and the chain channel being arranged at an angle to each other,— a link coupler for pushing the end bar of an uncoupled link into the hook of one of the assembled links, and a pusher device for advancing the assembled links in the chain channel, substantially as set forth. (7) In a machine for coupling chain links, the combination of an inclined feed chute adapted to receive uncoupled chain links, a horizontal chain channel adapted to receive assembled links, a link coupler for pushing the end of an uncoupled link into the hook of one of the assembled links, and a pusher device for advancing the assembled links in the chain channel, substantially as set forth. (8) In a machine for coupling chain links, the combination of a feed chute adapted to receive uncoupled chain links, a chain channel adapted to receive assembled links, a link coupler for pushing the end bar of an uncoupled link into the hook of one of the assembled links, a pivoted thrust bar adapted to advance the assembled links in the guide way, and a spring adapted to move the swinging end of the thrust bar into position for engagement with one of the assembled links, substantially as set forth. (9) In a machine for coupling chain links the combination of a chain channel adapted to contain the assembled links, a pusher device adapted to engage with one of the assembled links, and an adjustable bar for actuating the pusher device to properly advance chain links of different sizes, substantially as set forth. (10) In a machine for coupling chain links, the combination of a feed chute adapted to receive uncoupled chain links, a chain channel adapted to receive assembled links, a link coupler for pushing the end bar of an uncoupled link into the hook of one of the assembled links, the plate arranged in the plane of the chain channel, and means for advancing the assembled links in the guide way, and turning the last coupled link under the plate, and into line with the previous link, substantially as set forth."

Fassett's device for coupling links by a sidewise thrust is shown **in Fig.** 2, which is reproduced from the drawings of the patent in suit:

Banning & Banning & Payson, for complainant.

Cited the following authorities to sustain the proposition that the action of the patent office in allowing a separation of claims for the purpose of filing divisional applications is conclusive, and not reviewable in the courts: Matthews v. Wade, 1 MacArthur, Pat. Cas. 158; Bennett v. Fowler, 8 Wall. 448; Ex parte Linus Yale, Com. Dec. 1869, 111; Goodyear v. Wait, 3 Fish. Pat. Cas. 245; Kelleher v. Darling, 14 O. G. 674; Ex parte Atwood, Com. Dec. 1869, 100; Ex parte Sumner, Com. Dec. 1871, 182; Manufacturing Co. v. Thomas, 5 Fish. Pat. Cas. 149; Ex parte Murray, 3 O. G. 659; McKay v. Dibert, 5 Fed. Rep. 590; Ex parte Bancroft, 20 O. G. 1894; Ex parte Young, 33 O. G. 1391; Ex parte Herr, 41 O. G. 464–466; Ex parte Sartell, 42 O. G. 296; Mahn v. Harwood, 112 U. S. 358, 5 Sup. Ct. Rep. 174, and 6 Sup. Ct. Rep. 451; Marsh v. Nichols, Shepard & Co., 128 U. S. 610, 9 Sup. Ct. Rep. 168; U. S. v. Arredondo, 6 Pet. 729; Wilder v. McCormick, 2 Blatchf. 35; Hoe v. Cottrell, 1 Fed. Rep. 599; McMillin v. Barclay, 5 Fish. Pat. Cas. 199; Rubber Co. v. Goodyear, 9 Wall. 798; Seymour v. Osborne, 11 Wall. 541; Inspirator Co. v. Jenks, 21 Fed. Rep. 913, 914; Giant Powder Co. v. Safety Nitro-Powder Co., 19 Fed. Rep. 511; Rake Co. v. Marsh, 6 Fish. Pat. Cas. 394, 395; Jordan v. Dobson, 4 Fish. Pat. Cas. 241; U. S. Rifle & Cartridge Co. v. Whitney Arms Co., 2 Ban. & A. 497; Tarr v. Folsom, 1 Ban. & A. 26; Eureka Co. v. Bailey Co., 11 Wall. 492; Bartlett v. Kane, 16 How. 272; Doughty v. West, 3 Fish. Pat. Cas. 585; Railway Register Manuf'g Co. v. North Hudson C. R. Co., 23 Fed. Rep. 594, 595;

Goodyear v. Rubber Co., 2 Fish. Pat. Cas. 514; Tilghman v. Mitchell, 4 Fish. Pat. Cas. 624; Whitney v. Mowry, Id. 208; Railroad Co. v. Stimpson, 14 Pet. 458; Foley v. Harrison, 15 How. 448.

L. Hill and Kerr & Curtis, for defendant.

WOODS, Circuit Judge. Suit for infringement of patent and injunction. In the opinion of the court, the patent in suit, in respect to the claims alleged to have been infringed, is invalid, for two reasons: First, because it is not covered by the reservation contained in patent No. 347,338, (Case A;) and, second, even if the reservation were sufficient, the matter of this patent (Case C) was not divisional, or properly severable from the matter of the first patent, (A,) whether the severance be considered as direct, or as made through Case B.

The contention of the complainant is that the claims in the patent of Case A, and the claims of Case B and of the Howe patent, with which B was put into interference, were for specific constructions,—the first for an endwise, and the others for a sidewise, coupling machine,—while the patent in suit is fundamental and generic, and covers a machine made up of the parts named or described, whether arranged and combined for coupling by an endwise, sidewise, or other kind of thrust, and that, the first applications being specific, the reservation in Case A operated, as it was designed to do, to save to the applicant the right to put into Case B generic claims, and that, having been prevented from doing that by reason of the declaration of interference between Case B and the Howe patent, Case C was a legitimate means of attaining the desired end. The reservation will not bear that construction. The reference, instead of being to broad or generic claims, was plainly to claims more specific than those of the patent, which were already to be found in Case B, covering the sidewise thrust, and not to any which were thereafter to be formulated, and addeded to the application in that case. The entire reservation is as follows:

"The feed chute, guide way, and means for pushing the assembled links forward, a delivery wheel or device, the fulcrum plate or corner, operating mechanism, and such details of construction as are not herein broadly claimed,—form the subject of a separate application, (serial No. 174,962.)"

In other words, whatever is "broadly claimed" is to be found herein, but, for the elements specified with such details of construction as are not herein broadly claimed, reference is made to Case B, of which they "form the subject." The patent granted, though for an endwise coupling, showed the entire machine, with all its so-called fundamental or generic elements; and the evident purpose of the reservation was to guard the patent against being construed so broadly as to include the claims in Case B for the sidewise movement; the avowed object of the separation having been to bring about a declaration of interference between Case B and the Howe patent, and meanwhile to enable Case A to go, as it did, to undelayed issue. There was necessity for guarding against such construction. The patent itself contains a suggestion of the applicability of the machine to the coupling of other "forms or patterns of chain links," and in the caveat which Fassett had filed the

mode of construction for sidewise thrust had been expressly described and illustrated. Indeed,—to my mind, though it is not a point necessary to be decided,—once the machine for the endwise coupling had been invented, it was only a matter of mechanical skill, and not invention, to adapt it to the sidewise thrust, and if Fassett was, as it seems clear he was, the first to invent the machine for the endwise thrust, the interference with Howe should have been resolved in his favor, on the ground that Howe's patent was a mere mechanical modification of Fassett's device. Besides the manner of coupling shown in Howe's patent, the sidewise coupling might have been effected without removing the chain guide or channel from its location directly under, and in the same vertical plane with, the feed chute. This could be done by causing each link, as it reaches the bottom of the chute, to be pushed a proper distance to one side, and then either to be lowered or moved forward into position to be pushed into coupling by a counter sidewise thrust. A skilled mechanic would readily supply the means for these movements, and perhaps suggest other more simple or familiar modes of accomplishing the result. But, whether the decision upon the interference was right or wrong, it is conclusive between the parties, since no steps were taken to set it aside. Indeed, there has been an avowed acquiescence in the ruling.

In view of the terms of the reservation, and of the fact that the applications in Cases A and B were prepared with the intention that the latter should be put into interference with the Howe patent, the assertion that the complainant discovered that his generic claims had been omitted from Case B when, on account of the interference, it was too late to add them, must be regarded as an afterthought.

Some of the considerations already advanced go far to establish the proposition that the matter of Case C was not severable from Case A, and that, by taking out the patent for a device arranged to operate in a specific manner, the claimant abandoned to the public the more general claims which might have been predicated upon the same combination of parts. The conclusive consideration is that the so-called fundamental or generic claims and the specific claims found in Cases A and B and in the Howe patent are for the same machine, as a whole, and not for different parts thereof, and are distinguishable only in respect to their scope. The generic claims are for a chain-link coupling machine, composed of the following elements, (as named in the reservation,) without restriction of the manner in which the coupling should be effected, viz. the feed chute, guide way, pusher, delivery wheel, fulcrum, and operating mechanism; while the specific claims are for the same machine composed of the same physical elements combined in the same general manner, but so arranged as to effect the coupling of the links in one case by an endwise, and in the other case by a sidewise, movement. Except those two, it does not appear that any other mode of effecting the coupling had been thought of as feasible or desirable, though it is conceivable that other modes might be used; and there was therefore no practical reason for prosecuting the generic

claims, except to procure a patent which should dominate the other two, the effect of which would be to nullify the decision in favor of Howe upon the interference, and to extend for eighteen months the monopoly acquired by the complainant under his first patent.

These results are perhaps not conclusive of the invalidity of the patent, but they justify and require a strict application of the doctrine of the patent office that applications for patents shall not be severable except upon structural lines; meaning, as I think must be held, upon physical lines which actually divide the machine into separable parts. It may happen, in proper cases for division, that some of the parts will be dominating; but they must be less than the whole device, and separable upon a structural line from other physical parts. If the claims in question here were properly severable, it is difficult to suppose a case in which broad and narrow claims covering the same devices or combinations of elements might not be severed.

It has been argued that the action of the patent office in allowing a separation of the claims is conclusive, but the proposition is deemed unsound, and not established by the authorities cited in support of it.

The court, upon the whole case, finds for the defendant, and that the bill should be dismissed for want of equity.