LANG v. TWITCHELL-CHAMPLIN CO.

(District Court, D. Maine. August 11, 1913.)

No. 688.

1. PATENTS (§ 112*)—PRIORITY OF INVENTION—DECISION OF PATENT OFFICE.

The decision of the Patent Office in interference proceedings on the question of priority of invention between two applicants, if not conclusive, is entitled to weight.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 162–165; Dec. Dig. § 112.*]

2. PATENTS (§ 22*)—INFRINGEMENT—DOCTRINE OF EQUIVALENTS.

The doctrine of equivalents applies to all classes of inventions, although more broadly to those of a primary character.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 24; Dec. Dig. § 22.*]

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—MACHINE FOR MAKING SOLDER-HEMMED CAPS.

The Cobb patent, No. 1,009,474, for a machine for making solder-hemmed caps, for closing cans, was not anticipated and discloses patentable invention and merit although not a pioneer. Claims 46 and 58 also *held* infringed by the machine of the Odquist and Lyche patent No. 970,539.

In Equity. Suit by Edward M. Lang, Jr., against the Twitchell-Champlin Company. On final hearing. Decree for complainant.

Edward P. Payson, of Boston, Mass., and Payson & Virgin, of Portland, Me., for complainant.

Linthicum, Belt & Fuller, of Chicago, Ill., for defendant.

HALE, District Judge. This patent suit now comes before the court for final hearing upon pleadings and proofs. The complainant is assignee, by assignment before issue, of patent to Elmer M. Cobb, No. 1,009,474. The patent was applied for November 2, 1906, and, after delay by interferences, issued November 21, 1911, on "machine for making solder-hemmed caps." The defendant says that the patent is void by reason of anticipation; that it is not infringed; that the alleged invention was in public use and on sale more than two years prior to the date of filing Cobb's application; and that the patent is therefore invalid and void.

The case arises in the canning art. The invention relates to machines for the purpose of placing a hem of solder around caps intended for closing cans used for hermetically sealing goods. The necessity for cap-hemming machines is that solder is so soft and flexible that thin rings of it cannot easily be carried about and handled; and that it becomes convenient and useful in the art to have the cap bordered with solder in order that, in placing the cap over the orifice in the top of the can, the solder can be easily melted by a hot iron, or by some other device, to hermetically seal the can. The solder-hemming machines include mechanism for introducing the caps, one at a time, from a large supply at the proper point for use, for supplying solder and making it into rings, for bringing the caps and rings into proper rel-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ative position by locating the margin of the cap within the encircling solder ring; and also a turntable or turret for bringing the rings into position quickly and conveniently; also receptive and active dies for the several operations which are necessary for making the hem or border of solder around the edge of the caps. The claims of the Cobb patent in suit are two, namely:

(46) In a machine for making solder-hemmed caps, the combination of means for providing rings of solder, a turret having a plurality of dies therein adapted to receive said rings in succession, means for revolving said turret, and a cap-dropping device, including means for holding a vertical column of caps, and mechanism for separating the caps from said column one by one and delivering them in succession upon said rings in said dies, substantially as described.

(58) In a cap-hemming machine, a plurality of active dies, a coactive receptive die, means for depositing a cap upon the receptive die, means for bringing said die into successive positions under said active dies, which perform the hemming operation, and means for expelling the hemmed cap from said die in its final position, substantially as described.

It will be seen that claim 46 expressly recites a combination of means for providing the solder rings; a revolving turret having a plurality of receptive dies; means for revolving the turret; a cap-dropping device, including means for holding vertical column of caps; and a mechanism for separating the caps from the column, one by one, on rings. 58 is a broader claim. Without specifying means for providing the solder rings, it expressly calls for: (1) A plurality of active dies; (2) a coactive receptive die; (3) means for depositing a cap on the receptive die; (4) means for bringing the die into successive positions under the active dies; (5) means for expelling the hemmed cap from its final position.

The Cobb machine of the patent in suit is mounted upon a heavy base and consists of means for making solder rings from a ribbon of solder; a rotatable turret or turntable, operated rapidly by power and carrying five receptive dies, each adapted to receive a solder ring; a cap carrier, out of which the caps enter the receptive dies in succession, each one to rest in turn on the solder ring, after having been separated from its fellows by a separator, or finger, as each receptive die on the turning turret goes under the cap carrier; and a plurality of active dies.

The Cobb machine produces its results by five steps:

First. A solder ring is made from a narrow strip of solder grooved and deposited on a shoulder in the receptive die.

Second. As the turret revolves, a cap is separated from those upon the cap carrier and drops upon the inner margin of the solder ring.

Third. The outer part of the ring is turned straight up, past the edge of the cap.

Fourth. The upstanding edge of the solder ring is forced down upon the upper margin of the cap and hems it.

Fifth. The hemmed cap is expelled.

The experts describe the operation of the machine in detail; but for present purposes it is not necessary to follow the description.

1. The defendant says that the Cobb machine is invalid by reason

of anticipation; that the Cobb patent is not a pioneer one; that the complainant has no right to monopolize a result, nor the means of accomplishing a result in terms so broad and comprehensive as would be necessary to include the defendant's machine; that the claims of the patent cannot be held to cover every means but only such means as are shown and described in the Cobb patent and a plain equivalent for them; that the claims must be limited in their scope to the actual combination of essential parts as shown, and cannot be construed to cover other combinations of elements of different construction and arrangement.

[1] The question of anticipation is directly presented in the Odquist & Lyche patent, No. 970,539, September 20, 1910; the Johnson patent, No. 860,302, July 16, 1907; and the Norton & Krummel patent, No. 941,806, November 30, 1909. All these patents are in the canning art. The defendant's machine is made under the Odquist & Lyche patent, which was brought into interference in the Patent Office with the patent in suit. A very important question of anticipation arising in the prior art is whether Cobb or Odquist & Lyche first invented the cap-hemming machine which we will assume for the present to have been described in claim 58. This question has been before the Patent Office on interference proceedings, involving the application of Cobb filed November 2, 1906, and the application of Odquist & Lyche filed September 4, 1906. The adjudication of the Patent Office was favorable to Cobb. Claim 58, which had formerly been a claim of the Odquist & Lyche, was made a part of the Cobb patent. Without undertaking to decide how far the decision in the interference proceedings was conclusive upon the parties, no steps having been taken to set it aside, I can find no reason for holding that the examiner came to an incorrect conclusion. There is no necessity for deciding how far the Johnson patent is involved in the decision of the Patent Office relating to interference; I do not need to discuss the evidence in detail upon this point. I think the proofs fail to show, by machine or model, an earlier disclosure of Johnson's invention than that made in his application of June 26, 1905. Both in reference to the Odquist & Lyche patent and the Johnson patent, the conclusion of the Patent Office is entitled to weight. Robinson on Patents, 1017; Morgan v. Daniels, 153 U. S. 120, 125, 14 Sup. Ct. 772, 38 L. Ed. 657; McCarty v. Lehigh Valley R. R. Co., 160 U. S. 110, 16 Sup. Ct. 240, 40 L. Ed. 358; Gandy v. Marble, 122 U. S. 432, 7 Sup. Ct. 1290, 30 L. Ed. 1223; Fasset v. Ewart Mfg. Co. (C. C.) 58 Fed. 360, 366. With reference to the Norton & Krummel patent, the proofs of an invention earlier than the date of application, April 6, 1905, do not seem sufficient to carry back their invention beyond the date of their application. The same is true also of the Schultz patent, No. 816,-943, April 3, 1906.

With regard to the date of invention in the Cobb patent, the patentee claims that he conceived his inventive thought in June, 1903; that he reduced it to a practical working machine in the fall of 1903 and winter of 1904; that in the fall of 1904 he exhibited the machine to Mr. Sleeper with a view to procuring his assistance in improving

some of the mechanical motions and strengthening some of the parts; that this machine had a cap-carrying device differing somewhat from the cap dropper shown in the Cobb patent, whose drawings were made from the machine now in use, called the "Little Red Machine"; and that from the early machine, rebuilt by Sleeper, came ultimately the machine which we have before us in the case. There is testimony tending to show that in November, 1903, when Cobb's patent for a spiraling device, No. 799,974, was applied for, Cobb had a complete conception of the machine which he afterwards exhibited to Sleeper. Mr. Sleeper's testimony is convincing that a machine was shown to him in the fall of 1904, and, on being perfected in adjustment and the strengthening of parts, it finally became the Cobb machine, now in the case. While the machine submitted to Sleeper in the fall of 1904 does not appear by the proofs to have been put in public use at that time, it was then exhibited and found to embody its inventive thought. The proofs convince me that the invention of Cobb's machine, shown to Sleeper, and appearing in testimony, antedates the invention of Odquist & Lyche, Johnson, Norton & Krummel, Schultz, or that of any patent other than Norton's to which last I shall refer. The testimony of Sleeper is important in reference to the time when he saw the machine involving Cobb's invention. To establish the date of this invention as early as the autumn of 1904, we have, then, the concrete, visible, contemporaneous proofs, sufficient even to meet the very strict test in this circuit announced in Emerson & Norris v. Simpson Bros. Corporation (C. C. A.) 202 Fed. 747, 752. It may be observed, also, that the lapse of time and other conditions in the case last cited called, perhaps, for a severer test than ought to be invoked in the case at bar.

An examination of the prior art shows that hemming caps by machinery is old. The Norton patent, No. 702,376, June 10, 1902, shows a machine by which a solder band wider than a cap is fed in; out of it a disc is cut and dropped; and a groove is formed in the solder band surrounding the hole left in the band. The grooved solder band, with the hole in it, is then moved straight on, to and between another set of dies where a cap descends into the groove in the solder band; and a die simultaneously cuts the outside periphery of a ring from the grooved band, thereby completing the solder ring. The die also slightly turns up two ears from the cap, upon this ring, to hold it to the cap. No turntable being provided, the cap and ring slide off by gravity, at right angles, down a transverse passage to a hemming die; and the grooved solder ring is hemmed upon the cap. The learned counsel for the complainant has aptly and briefly described the operation of the Norton patent; and I have followed quite closely his description of such operation. The Norton patent provides no rotary carriage for carrying the work to the successive positions for the several operations. It provides no turntable or turret. It is contended by the defendant that the matter of sliding the partly formed ring by gravity to the desired position is an equivalent for the turntable in carrying the work to the necessary positions for the performance of the three operations necessary to hem the cap; that, inasmuch as rotary carriers were known in the art, no invention is involved in the Cobb machine, under the broad language of the two claims involved,

in combining the ring forming, ring and cap assembling, and hemming instrumentalities of the Norton patent with a rotary carrier known in the prior art. In the Norton machine, the materials instead of being carried by a part of the machine from one set of active dies to another, they themselves travel, without any accompanying part of the machine, from one working point to another; and complainant urges that taking the several elements used by Norton and combining them with the revolving turret or turntable, as a part of the machine, and as described in the Cobb patent, involves invention. Without entering upon a detailed discussion of the subject of the Norton alleged anticipation, I am satisfied with the reasoning of the complainant touching this matter. I think the Norton patent, No. 702,376, is not anticipatory of the combination set out in claims 46 and 58 of the patent in suit and does not invalidate those claims. I shall again refer to the Norton patent after considering the question of the defendant's infringement.

The defendant also refers to the Young patent, No. 52,240; the Towne patent, No. 86,473, and the reissue thereof, No. 9,837; and the Palmer patent, No. 90,681. These patents disclose dies constructed to make hooks and eyelets and are in an art, in many respects, dissimilar to the canning art. While they present points of similarity, justifying their use as a reference, and requiring study, they do not seem to me to present combinations which anticipate the claims of the patent now before me. The still earlier Norton patent, No. 364,662, describes the hemming of a solder ring upon a can cap but does not embody the features of the later and more complete Norton patent which I have considered. Reference is made to other patents in the prior art. Upon an examination of these patents, I do not think it necessary to consider them in detail. None of them can, I think, be held to be anticipatory of the Cobb patent. Upon consideration of the proofs on this subject, I am of the opinion that Cobb was the first inventor of the mechanical combination of means whereby a solder ring is made, partly grooved, and placed in a receptive die on a turntable, on revolution of which a cap is separated from its fellows and placed in the groove in the ring; on further revolution this solder ring is turned up past the edge of the cap by an active die; and upon further revolution, by a succeeding die, this turned-up portion is turned down upon the upper surface of the cap edge and hemmed upon this cap edge; the hemmed cap is then expelled. This mechanical combination is sufficiently described in claims 46 and 58 of the patent in suit. Although reference is made to different patents which disclose inventions containing the several elements of the Cobb patent, I think the combination recited in the two claims in suit is new and useful. While the patent is not a pioneer in canning, it cannot be said that it is a "late patent in a crowded art." I find nothing in the prior art which, in my opinion, ought to be held to invalidate the patent. It is, I think, of value and should be sustained.

2. Do the proofs show infringement of the Cobb patent in suit?

The defendant contends that, with the limitation which the court must give to the claims in suit, in order to sustain them, those claims must be restricted to the peculiar construction and arrangement of

the contrivances shown in the Cobb patent; and that, when so interpreted, it does not infringe. The complainant's solder rings are made by curling a narrow ribbon formed by flattening a round solder wire, while defendant's solder rings are made by stamping them out flatwise from a wide solder strip. In the Odquist & Lyche patent, under which defendant's machine is built, the wide solder ribbon is supplied from a reel on the floor and passes over a pulley and across a carrier from one roller to another; the rotating carrier has only four receptive dies, all constructed alike, and adapted to receive the solder rings and caps; there are three dies mounted above the turret to move vertically to perform their several operations on the work in three receptive dies, while an air blast through a passage expels the hemmed cap from the other receptive die; in the first position of any receptive die, a die descends onto the solder ring, stamping out the solder ring and depositing it in the receptive die and partly grooving it; in this initial operation defendant's machine does what complainant's machine performs in the first and second operations; the turret then carries the partly formed ring to the second position, when the cap is inserted and pushed down into the ring by a die, and the ring is grooved; the turret then moves a quarter turn, carrying the work to the third position shown in the exhibits, where a die completes the hem as shown; in the fourth and last position the hemmed cap is blown out of the receptive die by an air blast through a passage. The defendant illustrates its contention by various figures. It is urged that the two machines are notably different in appearance; that the complainant's is an upright machine; that its moving parts travel in vertical and horizontal planes; that Cobb selected and preferred this type of machine and must strictly hold to it, the patent not being a broad, pioneer patent; that Cobb's mechanism is made for a machine moving in vertical planes and for this reason is provided with a special cap-feeding mechanism to separate and deliver the caps singly from a vertical cap-feeding device to a horizontal movable turntable; that, on the other hand, defendant's machine is tilted and is designed in this way for special reasons in order to permit the use of an edge to edge cap, gravity feed, and an air jet for expelling the hemmed cap; that the machines differ also in the number of operations and in the character of the work done in the several operations. The learned counsel for defendant compares the operations of the two machines in detail and claims that in complainant's machine there is no die action involved in depositing the cap, while in defendant's machine there is a distinct die action in forming the ring which is stamped out of a wide, flat ribbon and is partly grooved in the same operation. The different operation of the two machines is further followed by counsel with great detail and clearness. The expert, Mr. Livermore, has pointed out the specific differences between the instrumentalities of the defendant's machine and those shown and described in the Cobb patent. In a discussion of these differences, quite clear and not too much incumbered by technical learning, he shows in a convincing manner that these differences are immaterial so far as the subject-matter of claim 58 is concerned; and that the specific contrivances employed in the

several operations in defendant's machine are the equivalents of the contrivances shown for performing the same operations in the Cobb patent, in the organization recited in claim 58, inasmuch as they co-operate together in like manner on like materials to produce substantially the same result. In the same line it must be said, in reference to claim 46, that in the defendant's machine, although the inclined chute in the Odquist & Lyche patent does not, literally speaking, hold a vertical column of caps as recited in the claim, it is in effect identical, so far as coaction of the elements in claim 46 is concerned, with the vertical holder in the Cobb patent, for it supports an indefinite string of caps, continually pressed by gravity towards the separating mechanism; and this mechanism is thereby enabled to perform its office of separating the caps, one at a time, from the lower end of the column; this column automatically advancing to bring forward another cap, after each cap has been in turn separated. Still, further, I do not think the defendant can avoid infringement by showing that, instead of using a comparatively narrow ribbon of a width equal to a ring of solder, it uses a strip of a width greater than the external diameter of the solder ring; one device for producing the solder ring from the solder strip is clearly the equivalent of the other. The same, I think, may be said of defendant's mechanism for feeding appliances, and, indeed, of each of the several mechanisms of the defendant's machine. It is true that Cobb's invention in the broad field of cap hemming cannot be said to perform a function never performed by any earlier invention, for it appears that a machine has hemmed caps before Cobb's machine; but Cobb's machine seems to me to perform that function in substantially a different way from any that preceded it and is entitled to invoke the application of the doctrine of equivalents, although not in the broad way that a primary invention could invoke that doctrine.

[2] Primary inventions are entitled to a looser application of the doctrine of equivalents than secondary inventions; but even a secondary invention is entitled to invoke the doctrine of equivalents, although to a more limited extent. The doctrine of equivalents applies to all classes of inventions. Walker on Patents, § 359; Robinson on Patents, § 258; McCormick v. Talcott, 20 How. 405, 15 L. Ed. 930.

The defendant also claims that the complainant's patent is so limited by the Norton patent, No. 702,376, that the defendant does not infringe the patent in suit. It will be seen that, while referring to the Norton patent as involving all the substantial invention appearing in the Cobb patent, the defendant uses a machine made under the Odquist & Lyche patent and not under Norton. Odquist & Lyche do not make a machine like Norton's. Their patent makes and grooves the solder ring and deposits it on a shoulder, as the Cobb Patent does, except that he only partially grooves the ring. I have already referred to the complainant's five steps. Odquist & Lyche complete the grooving and also accomplish these second and third steps by two movements, whereby defendant's cap is separated, drops upon a solder ring which is partly grooved and its edge turned up past the mar-

207 F.—24

gin of the cap. Under the Odquist & Lyche patent, the third step is the same as Cobb's fourth step; and the defendant's patent accomplishes in the fourth step what Cobb accomplishes in the fifth step.

I have examined with interest the operation of both machines. After a careful consideration of the proofs, I am satisfied that the complainant has met the burden of showing infringement on the part of the defendant.

3. The defendant contends that the invention involved in the Cobb patent was in public use and on sale more than two years prior to the date of filing the application in the Cobb patent; and that such invention is therefore invalid and void under the Revised. Statutes of the United States, § 4886.

In considering the date of the invention in the Cobb patent, I have already found that a machine was submitted to Mr. Sleeper in the fall of 1904, and that from such machine, after it became perfected in adjustment and the strengthening of its parts, finally came the machine which is now the Cobb machine. The proofs fail to show that the machine submitted to Sleeper was put in public use or upon sale at that time. While the machine submitted to Sleeper showed the invention of the patent in suit, it appears to have been submitted to Sleeper for examination and experiment and with a view of perfecting the machine. I think the proofs cannot be held to show that the machine was put to public use and sale at that time; but, on the other hand, that it is established by competent proofs that the Cobb invention was not in public use and on sale more than two years prior to the date of filing the application; and that the patent is therefore not invalid and void under section 4886 of the United States Revised Statutes.

[3] I am of the opinion, then, that the complainant has by competent proofs shown:

(1) That the two claims (46 and 58) of the complainant's patent, No. 1,009,474, are valid and are not anticipated by anything cited in the prior art.

(2) That the defendant has infringed claims 46 and 58 of the patent in suit.

(3) That the invention of the patent in suit was not in public use and on sale more than two years prior to the date of filing the application; and that therefore the patent is not invalid and void by reason of public use under section 4886 of the Revised Statutes of the United States.

A decree may be entered for the complainant for an injunction and for an accounting.

The case will be referred to a master for an accounting.

Upon the coming in of the master's report, this court will pass upon the question of costs.

The complainant may file draft decree on or before September 1, 1913.

The defendant may present corrections on or before September 10, 1913.

Decree to be settled on September 16, 1913.