## CENTAUR CO. v. ROBINSON.

(Circuit Court, D. Indiana. February 10, 1899.)

No. 9,650.

1. IMITATION OF LABELS—DISHONEST BUSINESS.
    The fact that the wrappers in which a medicine is placed on the market contain an erroneous statement that the compound is purely vegetable, where the same wrapper truthfully gives the formula in accordance with which it is made, is not such a fraud as will defeat the right of the manufacturer to relief from unfair competition, nor will a claim improvidently or mistakenly made in a former suit against different defendants, and which could not be sustained, preclude the complainant from alleging the true state of facts in the subsequent suit.

2. SAME—RIGHT TO PRELIMINARY INJUNCTION.
    An intending purchaser of an article in the market is not bound to be careful, nor to compare the labels in which similar articles are sold; and where a manufacturer has built up an extensive trade in his product, which has become known by a certain name, and a second manufacturer of a similar article places it in the market under the same name, and in packages so similar as to deceive the unwary and careless, such fact is evidence of an intended imposition, which entitles the first manufacturer to a preliminary injunction, although he is not entitled to the exclusive use of the name as a trade-name.[1]

This is a suit in equity by the Centaur Company against Edward H. Robinson for infringement of complainant's trade-mark and unfair competition. On motion for preliminary injunction.

Harvey, Pickens, Cox & Kahn and Hamline, Scott & Lord, for complainant.

W. H. Taber, T. W. Harper, and J. J. M. La Follette, for respondent.

BAKER, District Judge (orally). The first reason suggested why the plaintiff in this case is not entitled to a decree restraining the defendant from pursuing his business in the form he was carrying it on at the time the bill was filed is that on the wrappers of the plaintiff's medicine, which is put upon the market and sold to the public, is found the claim or statement that the compound so sold is purely vegetable, and it is insisted that the compound contains bicarbonate of soda and Rochelle salts, which are mineral compounds. I do not regard the isolated statement quoted as constituting a fraud of such a character as that it ought to defeat the complainant's right to invoke the assistance of the court. And, if there was any such misrepresentation in that regard, the wrapper carries the "antidote with the bane," because, in describing the ingredients as they are compounded in the medicine, it appears that the ingredients are truthfully stated; and if Rochelle salts or bicarbonate of soda, or any other ingredient that enters into the medicine as compounded, is a mineral,

---

[1] As to unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165, and Lare v. Harper & Bros., 30 C. C. A. 376.

the misstatement is corrected at once by the statement on the wrapper, which correctly names all the ingredients of which the medicine is compounded. I do not think this objection is tenable.

It is further said that, in a case by this same complainant in a court in North Dakota, it was there claimed by it that the word "Castoria" had been applied to a patented medicine, and the right to the use of the word so applied to that patented medicine had gone, by mesne assignments, to the present complainant; and it is called to the attention of the court that the same complainant, in the present suit, alleges that the term "Castoria" was never used in connection with the patented compound, and that it was found that the patented compound, by reason of the presence of one or more ingredients, was undesirable, and that it was manufactured according to the patented formula only for a short time, and that Dr. Pitcher discovered another recipe, omitting the injurious ingredients in the patented compound, and changed their proportions, and added further ingredients to the recipe, in accordance with which he had manufactured the medicine that was called by him, and had become known to the public under the name of, "Castoria," and that the name "Castoria" had, from the time that it was so applied by Dr. Pitcher, continuously to the present time, been the name that had been used to designate the compound that was manufactured by the complainant according to the recipe of Dr. Pitcher, and had never been applied to the patented compound. It is urged that the fact that the complainant in the case in North Dakota assumed a certain position in reference to the word "Castoria," and in the present case assumes another, presents a case of attempted fraud on the court. I do not understand the law to go to any such length. I do not understand, if a party improvidently or mistakenly institutes a suit, and claims that his title is of a certain character, that he is thereby precluded, in another suit between other parties, from claiming his true title, and, if in the latter case he should prove the claim to be true, that he may not secure a judgment the reverse of what he may have recovered in the former suit. Aside from that, however, it is sufficient to say that there is no legal evidence of what did appear in the case in North Dakota. There is no evidence to show that any such things as appear in the report of that case were actually in proof. The report, of course, is persuasive that there may have been such proof, but the published report is not legal evidence here of what was shown there. But, as I regard this case, that question is of minor significance.

I understand the law to be thoroughly settled that a man has no right to use even his own name, if he uses it in such way as that he misleads the public, to their injury, by imposing upon them articles of his manufacture as those manufactured by somebody else, who has a prior right to use the same name as his. So, here, if it be true, as claimed by the defendant,—and of this the court expresses no opinion, —that the word "Castoria" is public property, and that the defendant has the same right to use the word as the plaintiff has, that would in no wise aid the defendant. If the Centaur Company, through years of experience and labor in building up a trade, has caused the public to become acquainted with an article of its manufacture to which they

have given the name "Castoria," even though it may not have the exclusive right to the use of that name, still the defendant has no right to appropriate the name in connection with a medicine put up in bottles, and having wrappers, and a dressing up of the goods in such a way as that an intending purchaser would be deceived into buying the defendant's "Castoria" when he intended to buy the complainant's.

Now, an intending purchaser is not bound to be careful. Even if he has the opportunity of comparing the labels and wrappings, he is not bound to do so. And, indeed, where an article that costs but a few cents is offered upon the market, it is a matter of common knowledge, of which the court will take notice, that an intending purchaser pays little or no attention to it. He sees the name "Castoria," and whether it is the "Castoria" of the plaintiff or that of the defendant is a question that does not, by reason of the small value of the purchase, engage his attention. Unless there is some such marked dissimilarity as that, being acquainted with the complainant's form of putting up its "Castoria," it would at once arouse his suspicion, the intending purchaser would be readily deceived into making a purchase of an article that he really did not intend to buy. Now, take this case, as those packages of the complainant and defendant lie there on the table. It is perfectly apparent that if a man came into a drug store, and called for a bottle of "Castoria," and saw the word "Castoria" on those bottles, in many cases, unless the dealer that offered the article for sale was honest enough to draw the intending purchaser's attention to the difference, he would take the one that he did not intend to buy for the one that he went there to purchase. So that whether or not the word "Castoria" is a trade-name, belonging exclusively to the complainant, does not become very material, because the defendant has no right to use the word "Castoria" in connection with such a dressing up of his goods as is calculated to impose upon the unwary and careless. I think the most casual inspection of the wrappings of these packages, their size, their shape, the method of the wrapping, and the general impression from the imprint on them, shows that they do not have such dissimilarity as would arouse the suspicion of a careless or unwary purchaser; and, unless there is such dissimilarity, I understand the law to be that it amounts to evidence of an intended imposition, which ought to be restrained.

With that view of the law, there will be a temporary restraining order until the final hearing.